# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

JACK C. CHILINGIRIAN

    Petitioner,

V.                                                           Civil File No. 05-cv-10005-RCL

DAVID L. WINN, Warden FMC Devens,           Hon. Reginald C. Lindsay, USDJ

    Respondent

_____/

## PETITIONER JACK C. CHILINGIRIAN'S MEMORANDUM OF LAW IN OPPOSITION TO RESPONDENT DAVID L. WINN'S MOTION TO DISMISS PETITION FOR HABEAS RELIEF

## PRELIMININARY STATEMENT

Petitioner recognizes and acknowledges that the present First Circuit authority of <u>Perez-Olivo v. Chavez</u>, 394 F3d 45 (1st Cir. 20005) is binding upon this Court, but he submits this Memorandum in support of his position that <u>Perez-Olivo</u> was incorrectly decided.

## STATEMENT OF FACTS

There has been a significant change in facts which took place **after** the Respondent filed his Motion to Dismiss. The presentment of these facts is to insure that the record is preserved and that the issue of the appropriate calculation of Good Time Credits (GTC) is clearly before this Court for proper disposition and is not rendered moot.

On January 24, 2005, the United States Supreme granted certiorari in Petitioner's underlying criminal appeal. ( See Copy of Order in Supreme Court Docket No. 04-676 Attached as Exhibit "A"). The Judgment and sentence that was imposed was vacated in light of <u>United States v. Booker</u>, 543 US ___ (2005).

On March 24, 2005, Petitioner was released from custody pursuant to a JOINT STIPULATION FOR RELEASE ON BOND AND STAY OF RESENTENCING. To the extent that Petitioner's sentence

remains in doubt, the issues relating to Good Time Credits are not moot, and since his previous sentence contained a provision for Supervised Release, the calculation and determination of the Good Time Credits remains a viable and open legal question. For the reasons stated below the Court should deny the Respondent's Motion to Dismiss.

## I. **LEGAL ARGUMENT**

The Petitioner contends that under 18 U.S.C. Sec. 3624(b) that he is entitled to ear 54 days of good time credits per year of the sentence imposed upon him. The "Good Time Credit" statute provides, in pertinent part, as follows:

(b) Credit toward service of sentence for satisfactory behavior.

(1) Subject to paragraph (2), a prisoner who is serving a **term of imprisonment** of more than 1 year other than a **term of imprisonment** for the duration of the prisoner's life, may receive credit toward the service of the prisoner's sentence beyond the time served, of up to 54 days at the end of each year of the prisoner's **term of imprisonment**, beginning at the end of the first year of the term, subject to the determination by the Bureau of Prisons that, during that year, the prisoner has displayed exemplary compliance with institutional disciplinary regulations. Subject to paragraph (2), if the Bureau determines that, during that year, the prisoner has not satisfactorily complied with such institutional regulations, the prisoner shall receive no credit toward service of the prisoner's sentence or shall receive such lesser credit as the Bureau determines to be appropriate. In awarding credit under this section, the Bureau shall consider whether the prisoner, during the relevant period has earned, or is making satisfactory progress toward earning. A high school diploma or an equivalent degree. Credit that has not been earned may not be later granted. Subject to paragraph (2), credit for the last year or portion of a year of the **term of imprisonment** shall be prorated and credited within the last six weeks of the sentence.

(2) Notwithstanding any other law, credit awarded under this subsection after the date of enactment of the Prison Litigation Reform Act shall vest on the date the prisoner is released from custody. (EMPHASIS ADDED).

The BOP has promulgated a rule and a Program Statement reflecting in interpretation of the statute: "[pursuant to 18 U.S.C. Secs. 3613(b)...an inmate earns 54 days credit towards service of the sentence (good conduct time credit) **for each year served.**" 28 C.F.R. Secc. 523.20 (emphasis added). Program Statement 5880.28 depicts a formula addressing the problem of calculating good -time credit on sentences of a year and a day and provides examples of the partial-year proration at the end of a sentence.

The BOP erroneously interprets and applies Section 3624 in violation of the plain meaning of the statute. It administratively substitutes "year served" for "year of the prisoner's term of imprisonment." Consequently, rather than simply subtracting 54 days for each year for the sentence imposed, the BOP resorts to a circular series of mathematical computations to reach the bizarre conclusion that 54 days of good time credit on a sentence of one year and a day, equals 47 days of good time credit. The BOP thus deprives every inmate of seven days of good time credit per year of the sentence imposed.[1]

The Petitioner contends this is error and violates his rights in a significant and meaningful way. He claims that the BOP should take the sentence imposed by the court and award 54 days of good time credit for each full year of the sentence imposed, and prorate any remaining time with the appropriate multiplier used in its Program Statement.

### A. THE FISCAL AND HUMAN COSTS OF ALLOWING INCARCERATION BEYOND WHAT CONGRESS CLEARLY AUTHORIZED SUPPORTS PETITIONER'S POSITION.

This [seven-day] may appear to be insignificant at first examination. The difference in the calculation to an inmate and to society, however, is great. Using a ten year sentence as an example, the difference in time served by a model inmate under the BOP's interpretation versus the plain reading of the statute amounts to an additional 70 days.

---

(1) The process takes eight steps, but is shortened by the BOP in their method of calculating to the following:

$$366 \times .148 = 54.168 \ (366 + 54 = 420)$$
$$366 - 54 = 312 \times .148 = 46.176 \ (312 + 46 = 358)$$
$$366 - 46 = 320 \times .148 = 47.36 \ (320 + 47 = 367)$$
$$366 - 47 = 319 \times .148 = 47.212 \ (319 + 47 = 366)$$

"Thus-319 days actually served plus 47 day of GCT equals 366 days, or a sentence of 1 year and 1 day." Program Statement 5880.28. The Petitioner would bring to this Court's attention that the BOP's Program Statement relative to the above noted computation is some 45 pages long and requires several length and complicated mathematical calculations in order to arrive at this computation.

There are currently approximately 155,000 federal inmates serving sentences greater than one year and less than life. See FEDERAL BUREAU OF PRISONS, Quick Facts ( Sept. 2004 ) **available at** www.bop.gov/fact0598.html#Population (last visited April 17, 2005). The mean sentence now being served is about 9.5 years. At seven days per year, the time involved is over 28,000 years (155,000 x 7 x 9.5 / 365 = 28,256.5 ). At $23,181 per year per inmate (see Bureau of Prisons, **Annual Determination of Average Cost of Incarceration,** 69 Fed. Reg. 57364, 2004 WL 2112507 Sept. 24, 2004), the mere seven days on each year of a prisoner's sentence could amount to as much as $620 million in prison expenditures that Congress never contemplated, intended or authorized.

The human costs of this over-incraceration, of course, is immeasurable and unquantifiable. **See** Glover v. United States, 531 US 198 (2001) (holding that undeserved and unwarranted time spent in prison has constittuional implications); Argersinger v. Hamlin, 407 US 25 (1972) ( "the prospect of imprisonment for however short a time will seldom be viewed by the accused as a trivial or petty matter and may well result in quite serious repercussions...." ).

This case does not involve only one additional day in prison, or even the potential of 50 additional days in prison that may be served by the Petitioner here. The issue raised by this petition impacts virtually all of the more than 150,000 prisoners currently serving sentences in the federal system. For the average inmate, the BOP's methodology results in more than 2 more months of additional time in prison. The liberty interests at stake are enormous. No matter how the issue is examined even one undeserved day in prison violates the Constitution.

## B. PETITIONER'S INTERPRETATION OF THE FEDERAL GOOD TIME STATUTE SUPPORTS THE CONTENTION THAT INMATES SHOULD SERVE 85%--NOT 87.2%--OF THEIR SENTENCES.

There has never been any consideration by lawyers, judges, and those professionals working in the federal judicial system that prisoners would actually serve 87.2% of their sentence rather than 85%.

It would be a surprise to congressional authors of Sec 3624 (b) to find that the BOP had translated the statute's prescription of 54 days of good conduct time into a complex formula requiring inmates to serve 87.2% of their sentence. The authors did not believe there was any ambiguity about how good conduct time should be computed. The formula suggested by the statute is simple: 54 days multiplied by the term of imprisonment yields the amount of credit due an inmate who demonstrates good conduct while in prison.[2]   This is precisely what Senator Joseph Biden, a co-author of the bill envisioned: "In the federal courts, if a judge says you are going to go to prison for 10 years, you know that you are going to go to prison for at least 85% of that time--8.5 years which is what the law mandates. You can get up to 1.5 years in good time credits, but that is all. And we abolished parole. So you know that you'll be in prison for at least 8.5 years."  141 Cong. Rec. S2348-01 (Feb. 9. 1996).[3]

---

(2)   By way of example, to apply section 3624(b) to a ten-year sentence, one would use the following calculations:

| | |
|---|---|
| Statutory Formula: | 54 days x 10 years = 540 days GCT |
| Total Term of Imprisonment (in days) : | 10 years x 365 days = 3650 days |
| Term of Imprisonment Less GCT: | 3650 - 540 = 3110 |
| Awarded at the end of each year: | 311 + 54 days = 365 days |
| Total Time To Be Served (Including GCT): | 311 x 10 = 3110 |

(3)   In the case of a sentence including a partial year, e.g., as in Petitioner's case 87 months ( 7 years and three months, the statute would permit the BOP to "pro-rate" the additional 3 months. The following calculations would be utilized:  ( 54 x additional days ) divided by 365 = pro-rated good time credit. In the example of the Petitioner:  ( 54 days x 180 ) divided by 365 = 13.3  = 13 days good time credit.

Senator Biden also commented on this issue when he said: "So my Republican friends in a compromise we reached on the Senate floor back in November...said no State can get any prison money unless they keep their people in jail for 85 percent of the time just like we do at the Federal level in a law written by yours truly and several others." 140 Cong. Rec. S 12,349 (1994). Although the 85% rule has been universally recognized by federal lawyers and sentencing judges as the measure of good time, the rule is not honored. No federal prisoner, no matter how virtuous, ever serves less than 87.2% of the sentence imposed. Thus, Congress specifically considered the loss of good time resulting from calculating against time actually served and rejected that method.

Courts have expressed this common understanding, referring to the "eighty-five percent rule" in describing the amount of a federal sentence that an inmate must serve, or the "fifteen percent rule" in describing the amount of good time credit available on a federal sentence. **See, e.g.,** United States v. Tocco, 135 F3d 116, 131-32 (2d Cir. 1998) ( assuming, in the course of calculating a sentence, that an inmate is entitled to "54 days of good time credit for each year of his prison sentence."); Thorpe v. U.S. Parole Comm'n, 902 F2d 291, 291-2 (5th Cir. 1990) ( affirming Parole Commission's calculation of intentionally-transferred sentence based upon fifteen percent good time credit); White v. Scibana, 314 F. Supp. 2d 834, 840 (W.D. Wis. 2004) ( "[T]he court of appeals has assumed that an inmate may be able to deduct up to 15% of his or her sentence by earning good conduct time...."), citing United States v. Prevatte, 66 F3d 840, 846 (7th Cir. 1995) (Posner, J., concurring), **holding reversed** in White v. Scibana, 390 F3d F3d 997 (7th Cir. 2004).

In adopting Sec. 3624, Congress utilized the simple language "term of imprisonment" rather than language such as "credited as eraned or computed on a monthly basis." Congress intended that good time credit be easily calculated. See S. Rep. 98-225, reprinted in 1984 U.S.C.C.A.N. 3329 (describing Sec. 3624 as creating an "easily determined rate"). Instaed of folliwng the simple formula contained in the language of the statute the BOP has utilized its own formula to the detriment of the Petitioner and all other inmates in the federal system

Indeed, even the BOP, in its Security Designation and Custody Classification Manual, invokes the eighty-five percent rule in describing an inmate's expected length of incarceration:

> MONTHS TO RELEASE. This item shall reflect the estimated number of months the inmate is expected to be incarcerated....Based on the inmate's sentence(s) enter the total number of months remaining less 15% (for sentences over 12 months), and credit for any jail time served.

P.S. 5100.07 at 5-8 **available at** http://www.bop.gov/progstat (last visited April 17, 2005). The BOP then Gives an example: "An adult convicted of Breaking and Entering under the [Sentencing Reform Act] provision is sentenced to eight years. The expected length of incarceration is (96 x 85% = 81.6)."[4] The program statement goes on to state "[o]ffenders whose offense was on or after November 1, 1987, will be expected to serve approximately 85% of the sentence length, rounded to the nearest whole number." **Id.** at 6-8. The BOP's own use of the eighty-five percent formula in its agency guidance casts doubt on the assertion by them that the statute must be read to limit the award of good time, or, alternatively, is ambiguous.

### C. THE RULES OF STATUTORY CONSTRUCTION REQUIRE REJECTION OF THE BOP'S INTERPRETATION OF SEC. 3624(b).

There are three bases for finding that section 3624 plainly requires the result which the Petitioner in the instant case seeks as an award of 54 days of good time credit for each year of the sentence imposed upon him. Each of these points i8s rooted in an established canon of statutory interpretation. These arguments are stated as follows: (1) the plain meaning of Section 3624(b) supports the award of 54 days for every year of the sentence imposed: (2) the context of the provision supports the award of 54 days for every year of the sentence imposed; and (3) the legislative history of the provision supports the award of 54 days for every year of the sentence imposed.

---

(4) If the BOP were consistently following its own guidance, the expected legnth of the sentence actually would be 96 x 87.2 % = 83.7.

The plain language of the statute compels the result which MR. CHILINGIRIAN seeks from this Court. The statute itself refers not to "time served" but to "term of imprisonment" as the basis for calculating good time credits. When a statute speaks clearly to the issue, judicial inquiry into the statute's meaning, in all but the most extraordinary circumstances, is finished. Pavelic & Leflore v. Marvel Group, 493 U.S. 120 (1989); Rubin v. United States, 449 U.S. 424, 430 (1981). Further, as stated in United States v. Ron Pair Enterprises, Inc., 489 U.S. 235 (1989):

> Plain meaning of legislation should be conclusive, except in rare cases in which the literal application of the statute will produce [a] result demonstrably at odds with [the] intention of its drafters; in such cases, intention of drafters, rather than strict language, controls.

**See generally,** Sutherland Stat. Const. Sec. 46.01 ( 5th Ed.).

The Supreme Court has stated that where "the intent of Congress is clear, that is the end of the matter, for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." Chevron U.S.A. v. Natural Resources Defense Counsel, 467 U.S. 837, 842-43 (1984). The Court must look to "the language [of the statute] itself, the specific context in which the language is used, and the broader context of the statute as a whole." Robinson v. Shell Oil Co. 519 U.S. 337, 342 (1997).

The first step of analysis under Chevron is a determination whether Congress has plainly stated its intent. United States v. LaBonte, 520 U.S. 751, 762 fn. 6 (1997); McLean v. Crabtree, 173 F3d 1176, 1182-83 (9th Cir. 1999). Once the statute is found to be unambiguous, no deference is owed to the agency. LaBonte, supra; see also INS v. Cardoza-Fonseca,, 480 U.S. 421, 431 (1987) (ordinary and obvious meaning is not to be lightly discounted); Russello v. United States, 464 U.S. 16, 23 (9183) (it is generally presumed that Congress acts intentionally and purposely in the language it chooses). Nor may an agency ignore an unambiguous statutory definition in favor of its own preferred definition. Orca Bay Seafoods v. Northwest Truck Sales Inc., 32 F3d 433 (9th Cir. 1994) (regardless of policy justification, Secretary of Transportation may not exempt certain vehicles from clear statutory definition). Since Congress used the unambiguous phrase "term of imprisonment" in Sec. 3624(b), the BOP is simply not permitted to substitute the phrase "for time actually spent in prison" for the definition on how to claculate good time credits.

In a recent decision from the District of Maryland, the Hon. Alexander William Jr. clearly articulated the basis upon which the interpretation of the statute is most clearly harmonized with the intent of Congress. In <u>Williams v. Dewalt</u>, ___ F. Supp. 2d ___, 2004 WL 3922300 he stated: "Rather than construing the statute so that the phrase [term of imprisonment] carries the same meaning throughout the subsection, the BOP interprets "term of imprisonment" as "sentence imposed" in its first use in Sec. 3624(b), then as "time served" in its later use in Sec. 3624(b)." (Page 6 slip opinion).

As the Supreme Court has stated: "Identical words used in different parts of the same act are intended to have the same meaning." <u>Sorenson v. Secretary of Treasury</u>, 475 U.S. 851, 860 (1986) (quoting <u>Helvering v. Stockholms Ensikilda Bank</u>, 293 U.S. 86, 87 (1934)); <u>Gustafson v. Alloyd Co</u>, 513 U.S. 561, 570 (1995). In addition, when interpreting a statute, the words are interpreted "in their context and with a view to their place in the overall statutory scheme." <u>Davis v. Michigan Department of Treasury</u>, 489 U.S. 803, 809 (1989). As pointed out in <u>Williams v. Dewalt</u>, supra:

> "Beyond subsection (b), the phrase 'term of imprisonment' is also used throughout section 3624 to mean sentence imposed. Likewise, throughout the criminal code "term of imprisonment" is used as a term of art to mean sentence imposed, not time served." (Page 8-9 Slip opinion).

Based upon all of the factors recited above, it is Petitioner's contention that the good time statute as interpreted by the BOP is incorrect and should be rejected by this Court.

### D. THE BOP'S INTERPRETATION OF THE GOOD TIME STATUTE IS NOT ENTITLED TO CHEVRON DEFERENCE.

To the extent that the Respondent relies upon the rationale of Chevron as expressed by the First Circuit in Perez-Olivo, that position is erroneous because when "the intent of Congress is clear" as it is in the instant case, that is the end of the matter. Chevron deference may be accorded to the BOP's regulations under circumstances requiring special expertise. For example, in Lopez v. Davis, 531 U.S. 230 (2001), the Supreme Court accorded deference to the BOP in its administration of the Residential Drug Treatment Program offered to federal prisoners. The Supreme Court held that Congress had granted the BOP the discretion to decide which inmates qualified for early release after completion of the drug program. 531 U.S. at p. 240. Thus, the BOP could decide to make categorical exclusions, including preventing any inmate whose offense involved a firearm from receiving early release. **See id.** at p. 244. Implicit in the Lopez decision is the Court's recognition of the BOP's special expertise in administering penal programs. **Cf.** Pelissero v. Bureau of Prisons, 170 F3d 442, 447 (4th Cir. 1999).

This case is different because Congress never delegated to the BOP the power to decide the maximum amount of available good time credit.[5] In fact, in Section 3624(b), as discussed previously, Congress **dictated** rather than delegated the formula for determining available good time credit: "54 days at the end of each year of the term of imprisonment." 18 U.S.C. Section 3624(b); **see** H.R. Conf. Rep. 98-1159, reprinted in 1984 U.S.C.C.A.N. 3182, 3710 ("Amendment No. 130, Deletes 'thirty six' as proposed by the House, and inserts in lieu thereof 'fifty-four' as proposed by the Senate which increases 'good time' that accrues from 10 percent to 15 percent."). Due to the fact that the BOP was not authorized to interpret the maximum available good time credit, its interpretation should not be accorded any deference under the Chevron doctrine.

---

(5) In contrast, Congress granted the BOP discretion only in its area of expertise-determining eligibility for good time credit, I.e., whether the inmate had "displayed exemplary compliance with institutional disciplinary regulations" 531 U.S. at p. 244.

Moreover, the BOP's interpretation of the good time statute is unreasonable. As noted above, the simplest, clearest, and most honest reading of Section 3624(b) affords inmates 54 days of good time credit per year of their sentences, such good time awarded "at the end of each year" of the term ( 311 +54 = 365 ). This would be the only way to effect Congress' intent as stated in Section 3624(b) that inmates serving a sentence of one year and a day receive good time credit. If good time credit were earned only after service of 365 days, it would be impossible for an inmate serving a sentence of 366 day to receive more than one day of credit. The BOP's method for awarding good time credit in a year-and-a-day sentences recognizes this. Credit is earned after only 319 days. **See** Program Statement 5880.28 at 1-44-50.[6]

For an inmate sentenced to more than one year and a day, such as MR. CHILINGIRIAN, the BOP refuses to award good time credit until a full 365 days has been served. **See** Program Statement 5880.28 at 1-48 (" [good time credit] is not awarded on the basis of the length of the sentence imposed but rather on the number of days actually served."). 28 C.F.R. Sec. 523.20(a)(1) ("54 days of credit for each year served."). The BOP is steadfast in their interpretation even though it conflicts with Congress' intent.

"[D]eference only applies to 'reasoned and consistent' agency positions." Harco Holdings Inc., v. United States, 977 F2d 1027, 1035 (7th Cir. 1992). Since the BOP is patently inconsistent in its interpretation and application of Sec. 3624(b), deference is inappropriate.

### E. THE RULE OF LENITY SHOULD BE APPLIED IN THIS CASE.

Even if the good time statute were ambiguous (which Petitioner asserts that it is not) Supreme Court authority requires application of the Rule of Lenity to this penal statute, not deference to an executive agency. The First Circuit in Perez-Olivo, found that the good time statute was ambiguous and deferred to the BOP's interpretation under Chevron. 394 F3d at p. 53. Even assuming that "term of imprisonment" is ambiguous, the Supreme Court, especially Justice Scalia provides clear authority

---

(6)    Even under this situation, the BOP awards only 47 days credit  (319 +47 = 365).

pointing to the error in the First Circuit's reasoning in Perez-Olivo. The rule of lenity must be used in construing an ambiguous penal statute. Bifulco v. United States, 447 U.S. 381, 387 (1980). Deference to the BOP's administrative construction of an ambiguous penal statute "would turn the normal construction of criminal statutes upside down, replacing the doctrine of lenity with the doctrine of severity." Crandon v. United States, 494 U.S. 152, 177-78 (1990) (Scalia, J., concurring). The First Circuit erred in relying on administrative law principles that apply to statutory silence, rather than criminal law jurisprudence that controls statutory ambiguity in penal laws.

### 1. Section 3624(b) Is A Penal Statute To Which The Rule of Lenity Must Be Applied.

The rule of lenity applies where reasonable doubt persists about a penal statute's intended scope, even after resort to the language and structure, legislative history, and motivating policies of the statute. United States v. R.L.C., 503 U.S. 291, 305-06 (1992); Bifulco, 447 U.S. at p. 387. In Bifulco, the Supreme Court addressed statutory ambiguity in the punishment provisions of a federal drug statute. 447 U.S. at p. 382-83. The defendant asserted that the drug conspiracy statute did not provide for a special parole term. The Court held that the rule of lenity "must' inform construction of ambiguous criminal statutes, and the rule of lenity "applies not only to interpretations of the substantive ambit of criminal prohibitions, but also to the penalties they impose." 447 U.S. at p. 387.

The credit for good time law is a penal statute located in the criminal sentences section of Title 18. The Supreme Court has found that good time statutes are penal in several contexts. See Lynce v. Mathis, 519 U.S. 433 (1997) (ex post facto); Weaver v. Graham, 450 U.S. 24 (1981) (same) Preiser v. Rodriguez, 411 U.S. 475 (1973) (habeas corpus). Under well-established precedent, the federal good time law is a penal statute to which the rule of lenity applies.

### 2. **Chevron** Deference Does Not Apply Under Justice Scalia's Reasoning in **Crandon.**

In upholding the BOP's interpretation, the First Circuit in Perez-Olivo applied principles from civil administrative law regarding statutory silence or ambiguity under Chevron. Because Chevron does not apply to ambiguous criminal statutes, any statutory ambiguity must be resoled in favor of the prisoners under the rule of lenity. The Supreme Court addressed the conflict between administrative construction of criminal statutes and the rule of lenity in Crandon v. United States.

In Crandon, several private executives, who accepted government positions, received payments from their private employer to compensate them for financial loss from their transfers to public employment. The Court had to decide whether a criminal code prohibition on supplemental compensation to government employees barred the payments. The Court ultimately concluded the statute did not prohibit the payments, partly based on the rule of lenity. Crandon, 494 U.S. at p. 168.

In a concurring opinion, Justice Scalia, joined by ustices O'Connor and Kennedy, addressed the weight to be accorded the executive branch's interpretation of the penal statute. The concurring Justices drew a clear line between the executive branch's duty to impliment its interpretation of the statute and the judicial branch's function to interpret criminal statutes. 494 U.S. at p. 177 ("The Justice Department, of course, has a very specific responsibility to dt\etermine for itself what this statute means, in order to decide when to prosecute; but we have never thought that the interpretation of those charged with prosecuting criminal statutes is entitled to deference."). The concurrence concluded that the executive's construction of a penal statute "is not even deserving of persuasive effect" because it "would turn the normal construction of criminal statues upside down, replacing the doctrine of lenity with the doctrine of severity." Crandon, 494 U.S. at p. 178.

While the BOP has certain tasks delegated to it by Congress, the maximum amount of good time on a term of imprisonment is not so delegated. The agency does not purport to lower the maximum good time; the regulations and program statements only claim to impliment the good time statute. The federal courts, not the agency, are the arbiters of the meaning of ambiguous criminal statutes, and the executive

interpretation under <u>Chevron</u> "is not even deserving of ny persuasive effect." <u>Crandon</u>, 494 U.S. at p. 177 (Scalia, J., concurring). Interpretation of Section 3624(b) does not involve any executive expertise yo which the courts should defer.

The First Circuit's error in <u>Perez-Olivo</u> lies in its confusion of statutory ambiguity and statutory silence. Statutory ambiguity requires application of the rule of lenity. On the other hand, statutory silence permit's the agency to fill the void as it sees fit within reason. **See, e.g.,** <u>Lopez v. Davis</u>, supra., 531 U.S. at p. 242. The BOP in the present case purports to be doing no more than construing the good time statute; therefore, <u>Chevron</u> deference must give way to the rule of lenity. The statute must be read to allow for 54 days of good time credit for each year of the sentence imposed.

### F. **EXHAUSTION IS NOT A BAR TO CONSIDERATION ON THE MERITS.**

Although the BOP should generally have an opportunity to reconsider its decision to deny good time credits, there are situations where exhaustion of administrative remedies should not bar consideration on the merits. This is such a case. First, MR. CHILINGIRIAN is challenging the duration and not the conditions of his confinement under 28 USC Sec. 2241, exhaustion of administrative remedies is not jurisdictional. Second, as evidenced by the Declaration of JACK C. CHILINGIRIAN accompanying this Memorandum, such an effort at exhaustion is futile. Finally, again as evidenced by the Declaration, the Petitioner has in fact proceeded to submitting his various levels of appeal on the denial of good time credits and is simply awaiting disposition of his BP-11. There is no factual or legal reason to conclude that his Remedy Request will result in any decision except a denial.[7]

---

(7) The Respondent's Brief contains an argument that suggests that exhaustion should form the basis for dismissing the instant case. Unless some evidence is presented to the contrary that the result would be different for Petitioner than for any other inmate, then futility is a correct basis for allowing this case to proceed to conclusion.

1.  **Exhaustion Of Administrative Remedies Is Not A Jurisdictional Requirement In The Instant Case.**

Although exhaustion of administrative remedies is generally preferred, it is not a jurisdictional requirement in Section 2241 proceedings. United States v. Woods, 888 F2d 653, 654 (10th Cir. 1989). Congress did not include a requirement of exhaustion of administrative remedies in the statute upon which this Court's jurisdiction is based--28 USC Sec. 2241. The absence of such a requirement leaves the Court with the authority to reach the merits. McCarthy v. Madigan, 503 U.S. 140, 144 (1992).

Unlike the PLRA that includes the statutory mandate that, before a prisoner can litigate a civil claim regarding prison conditions, the prisoner must exhaust administrative remedies, eliminating "both the discretion to dispense with administrative exhaustion and the condition that the remedy be 'plain, speedy and effective' before exhaustion could be required"), Booth v. Churner, 532 U.S. 731 (2001) (construing 42 U.S.C. Sec. 1997e (a)), Congress has given no such direction, even under the AEDPA, that habeas petitioners are statutorily required to exhaust administrative remedies before filing their Sec. 2241 claims.

The presence of exhaustion requirements under the PLRA and AEDPA and its absence in Section 2241 means that Congress intended the distiction and deliberately chose not to require exhaustion in habeas proceedings. Rodriguez v. United States, 480 U.S. 522, 525 (1987) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."); 2A N. Singer, Sutherland Statutory Construction Sec. 57.06, at 654 (Sands 4th ed. 1984) ("Contrasting language in similar statutes may show that the legislature intended different standards of compliance."); Gozlon-Peretz v. United States, 498 U.S. 395, 404 (1991).

The Supreme Court expressly recognized this distinction in Porter v. Nussle, 122 S.Ct. 983 (2002). In Porter, the Court stated: "[O]ur opinion in Preiser v. Rodriguez, 411 U.S. 475 (1973) had described the two broad categories of prisoner petitions: (1) those challenging the fact or duration of confinement itself; and (2) those challenging the conditions of confinement." 122 S.Ct. at p. 989, citing McCarthy v. Bronson, 500 U.S. 136 (1981). Rge BOP's denial of Petitioner's administrative remedy claims up to the present clearly indicates that it is a futile effort and that there is no jurisdictional requirement for exhaustion for this matter to proceed to be decided on the merits.

## 2. Exhaustion of Administrative Remedies Is Futile In This Case.

Since there is no statutory bar, this Court may in its discretion consider the merits of MR. CHILINGIRIAN's habeas claims. In this case, there has been an effort to obtain administrative relief as reflected in the Declaration attached hereto. All of the submissions have been timely at the various levels in the process. At all steps of those proceedings the BOP has denied Petitioner the sought after relief, just as it has done for all other inmates asking for recalculation of their GTC. The BOP is obligated to follow its own rules and to support the prior decisions denying such relief to other inmates. As evidenced by Mr. Chilingirian's Declaration, other inmates at Camp Devens have been denied modification of their good time credits, and all have been denied. To expect that the Office of General Counsel in Washington, D.C. is going to overrule the Regional Director or the Warden at FMC Devens is to suggest that the Petitioner is on a fool's run. Any further exhaustion requirements should be excused in this case because MR. CHILINGIRIAN's efforts at further administrative remedies are clearly futile and would delay resolution of this matter.

## **CONCLUSION**

For all of the reasons recited in this Memorandum of Law and based upon all of the case authority presented, this Court should grant the Petitioner the sought after relief and the Court should direct that the Respondent and BOP recalculate Petitioner's Good Time Credits as recited in the Section 2241 Petition filed with this Court on January 3, 2005.

DTAED:   April 18, 2005                             RESPECTFULLY SUBMITTED

                                                    _____
                                                    JACK C. CHILINGIRIAN
                                                    PETITIONER PRO SE
                                                    20 CRESCENT LANE
                                                    BREWSTER, MA. 02631
                                                    508-896-8696

# Supreme Court of the United States
## Office of the Clerk
### Washington, DC 20543-0001

William K. Suter
Clerk of the Court
(202) 479-3011

January 24, 2005

Mr. Jack C. Chilingirian
Prisoner ID # 22512-039
Federal Medical Center - Devens
P.O. Box 879
Unit I (Camp)
Ayer, MA 01432


    Re:  Jack C. Chilingirian
           v. United States
           No. 04-676


Dear Mr. Chilingirian:

    The Court today entered the following order in the above-entitled case:

    The petition for a writ of certiorari is granted. The judgment is vacated and the case is remanded to the United States Court of Appeals for the Sixth Circuit, for further consideration in light of United States v. Booker, 543 U.S. ___ (2005).

    The judgment or mandate of this Court will not issue for at least twenty-five days pursuant to Rule 45. Should a petition for rehearing be filed timely, the judgment or mandate will be further stayed pending this Court's action on the petition for rehearing.

Sincerely,

William K. Suter, Clerk


EXHIBIT "A"

# Supreme Court of the United States

No.   04-676

Jack C. Chilingirian,

Petitioner

v.

United States

ON PETITION FOR A WRIT OF CERTIORARI to the United States Court of Appeals for the Sixth Circuit, No. 02-1695.

ON CONSIDERATION of the petition for a writ of certiorari herein to the United States Court of Appeals for the Sixth Circuit.

IT IS ORDERED by this Court that the said petition is granted. The judgment is vacated and the case is remanded to the United States Court of Appeals for the Sixth Circuit, for further consideration in light of United States v. Booker, 543 U.S. ___ (2005).

January 24, 2005

A true copy   WILLIAM K. SUTER
       Test:
Clerk of the Supreme Court of the United States
By _____
                                    Deputy